$350 **LS**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD BOANDL            :      CIVIL ACTION NO. **09 - 4799**
56 N. Sycamore Street     :
Macungie, PA 18062-1723   :      JURY TRIAL REQUESTED
        Plaintiff   :
                :
   vs.                    :
                :
TIMOTHY F. GEITHNER,      :
Secretary of the Treasury :
Treasury Department       :
1500 Pennsylvania Avenue, NW  :      **FILED**
Washington, DC 20220      :
        Defendant   :      OCT 1 9 2009
                        MICHAEL E. KUNZ, Clerk
                        By_____Dep. Clerk

## COMPLAINT

## EXCLUSION FROM ARBITRATION

This action is brought to enforce Federally secured rights protected by: the Rehabilitation Act and the interrelated Americans with Disabilities Act (ADA); the Age Discrimination in Employment Act (ADEA); and Title VII of the Civil Rights Act (Title VII). Thus, the remedy requested includes equitable and injunctive relief. Accordingly, the case is inappropriate for arbitration.

## PRELIMINARY STATEMENT

1. This suit is a civil action brought by Plaintiff, Richard Boandl, against the person who is the Department head as Secretary of the U. S. Department of the Treasury brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 706, 791-94, as amended in 1992, at 29 U.S.C. § 791(g), to adopt for Federal employees the standards applied under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq; under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq; and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) et seq, including § 2000e-3(a).

1.

Summons
Given 10/19/09

## JURISDICTION AND RELATED MATTERS

2.  The Plaintiff, Richard Boandl, who resides at 56 N. Sycamore Street, Macungie, Pennsylvania 18062-1723, is a male, citizen of the United States, at all relevant times referred to herein was over forty (40) years of age (date of birth: October 21,1948), and who has been disabled by polio causing paralysis in his legs since he was about one year of age.  He has also suffered from other conditions, including chronic lymphocytic leukemia since at least July, 2000.  The Plaintiff was employed by the Internal Revenue Service, Department of the Treasury for some thirty-one (31) years.  Shortly after his initial employment discrimination administrative Complaint in 2003, alleging denial of promotion, Mr. Boandl experienced violations of his rights protected by the Rehabilitation Act and the interrelated Americans with Disabilities Act, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act.  Violations of these cited Federal anti-discrimination laws continued even after his October, 2004 forced retirement by his former employer's use of negative references.  The negative references were designed to deprive him of status as an enrolled Agent entitled to represent taxpayers before the Internal Revenue Service.  Such post-employment negative references are actionable under Federal anti-bias law.  Robinson v. Shell Oil Co., 519 U.S. 337 (1997).

3.  Defendant, being named in his official capacity, as Department head of the Treasury Department, is Timothy F. Geithner, Secretary of the Treasury.

4. Federal question jurisdiction is present under 28 U.S.C. § 1331, as the basis of jurisdiction to enforce the laws of the United States; the Rehabilitation Act of 1973, 29 U.S.C. §§ 706, 791-94,

2.

as amended in 1992, at 29 U.S.C. § 791(g), to adopt for Federal employees the standards applied under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq; under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq; and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) et seq, and § 2000e-3(a). Jurisdiction of this Court is also present under 28 U.S.C. § 1343(4) to recover damages or to secure equitable or other relief under actions to enforce Federal Civil Rights laws.

5. The unlawful actions and practices alleged herein were committed within the Commonwealth of Pennsylvania and the Eastern Judicial District.

6. All conditions precedent to the institution of the present employment discrimination claims have been met. Plaintiff has fully complied with the Federal Sector Equal Employment Opportunity Regulations at 29 CFR § 1614 et seq. The section 1614 regulations set forth the requirements and procedures applicable to claims of discrimination by employees of the government of the United States, and related obligations, processes, appeals, remedies and enforcement.

7. Plaintiff Boandl, after some thirty years of employment by the Internal Revenue Service, Department of the Treasury, timely filed his first employment bias Complaint, Agency Case No. 03-3215, in August, 2003. In this 2003 claim, Mr. Boandl alleged denial of promotion to a GS-13 Agent position in favor of two younger less qualified, and less experienced females without disabilities, in violation of the Rehabilitation Act and the interrelated ADA; the ADEA; and Title VII (gender bias).

8. Plaintiff Boandl timely filed his second employment bias Complaint, Case No. 04-3091, relating to denial one month after his first employment bias Complaint of the use of a cell phone needed by the severely disabled polio survivor to carry out his field duties, and he alleged related retaliatory harassment and denial of reasonable accommodations, asserting age, disability, denial of reasonable accommodation, sex bias and retaliation. The U.S. Equal Employment Opportunity (EEOC) Administrative Judge granted summary judgment on the denial of the cell phone and other reasonable accommodation issues, such as assignments outside his normal work area, permitted hearing on other reasonable accommodation claims, *e.g.*, the issuance of an "opportunity to improve letter" and removal of Boandl from the "flexiplace" program.

9. The TD 05-2074M case was processed by the Agency as a mixed case, and Boandl, on October 4, 2005 filed an appeal with the Merit System Protection Board (MSPB). The MSPB Judge held Case TD 05-2074M was not a mixed case, and thus, the MSPB had no jurisdiction. Boandl then requested a hearing before the EEOC on the 2005 case. The TD 05-2074 employment bias administrative Complaint presented bases and issues of retaliation, harassment for prior equal employment opportunity activities including improper referral of Boandl for investigation to the Treasury Inspector General for Tax Administration, hostile environment, and constructive discharge, in violation of the Rehabilitation Act as amended by the ADA; the ADEA; and Title VII of the Civil Rights Act.

10. By Order of May 5, 2006, the EEOC Administrative Judge at Philadelphia consolidated Boandl's third employment bias case, 05-2074M, with his two earlier employment bias cases. No EEOC hearing was granted on the 2005 case.

4.

11.  The EEOC Administrative Judge at Philadelphia had held a hearing on November 15, 2005 and November 16, 2005 on the remaining claims in Case No. 04-3091.

12.  On July 26, 2007, the EEOC Administrative Judge entered judgment against Boandl pursuant to her Decision adverse to Boandl on the then remaining claims in Case No. 04-3091, and on Case No. 05-2074M.

13.  On August 7, 2007, the Defendant, the Department of the Treasury, entered a final decision, determining that the Department would fully implement the decision of the EEOC's Administrative Judge as to Cases 03-3215, 04-3091, and 05-2074.

14.  Plaintiff Boandl on September 6, 2007 timely filed with the U.S. EEOC's Office of Federal Operations (OFO) in Washington, DC his appeal in TD 03-3215, TD 04-3091 and TD 05-2074M. As of this filing in the United States District Court for the Eastern District of Pennsylvania these three cases, identified before the Office of Federal Operations as OFO Docket No. 0120073821, are still pending before the EEOC's Office of Federal Operations in Washington, DC. The Federal Sector Regulations at 29 CFR § 1614.407(d) authorize the filing of this suit in the U.S. District Court as to Plaintiff's 2003, 2004 and 2005 employment bias administrative Complaints in that: more than 180 days have elapsed since Mr. Boandl's filing of his appeal with the EEOC's Office of Federal Operations, "and there has been no final decision by the Commission."

15.  On September 20, 2007, Plaintiff, Richard Boandl, with some thirty-one years of experience as an Agent for the Internal Revenue Service, Department of the Treasury, applied for status as an enrolled Agent, *i.e.*, as a person entitled to represent taxpayers before the Internal

Revenue Service.   On February 1, 2008, the Agency Director of the Office of Professional Responsibility informed Plaintiff that while no decision had been made on his request for enrolled status, consideration was being given to denying this status due to the negative reference from the Agency Planning and Special Program Territory Manager.   On March 12, 2008, Boandl provided a written response to the Agency Office of Professional Responsibility at Washington, DC.   In his response, Boandl outlined his work achievements, including presenting documentary evidence.

16.  Upon review of Plaintiff's submission in support of his application for enrolled status, the Agency's own Director of the Office of Professional Responsibility at Washington, DC, on January 9, 2009, ruled that Boandl was qualified to be certified as an enrolled Agent.

17.  Boandl timely filed his May 23, 2008 administrative employment bias Complaint alleging negative references in retaliation for earlier employment bias Complaints in violation of the Rehabilitation Act and the interrelated ADA; the ADEA; and Title VII.   The Agency first accepted this administrative Complaint, and then incorrectly dismissed the May 23, 2008 Complaint in violation of the principles on retaliation set forth in the U.S. Supreme Court's holdings in Robinson v.Shell Oil Co., 519 U.S. 337 (1997) and in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).

18.  On August 11, 2008, Boandl filed an appeal of the dismissal to the EEOC's Office of Federal Operations in Washington, DC.   By its January 9, 2009 Decision, the EEOC's Office of Federal Operations reversed and remanded the Agency's dismissal of the retaliation claim, recognizing the holding of the U.S. Supreme Court's ruling in Robinson v. Shell Oil Co., supra, that

an employer's negative references after an employee's termination may be actionable as retaliation under Federal anti-discrimination in employment law.

19.   After the January 9, 2009 Decision by the EEOC's Office of Federal Operations remanding Plaintiff Boandl's May 23, 2008 administrative Complaint (TD-08-0329), the Defendant Agency repeatedly delayed the administrative proceedings by failing to state correctly the issue, *i.e.*, by denying that the essential issue was the providing of the negative reference.   The negative reference provided by the Defendant Agency in response to Boandl's application for enrolled status had contained fundamental factual errors including that Boandl "resigned," when in fact he had retired after some thirty-one years as a career employee of the Internal Revenue Service.

20.   The Defendant Agency also improperly delayed the processing of Boandl's 2008 case (TD-08-0329) by improperly forwarding the investigative file to the Hearings Unit of the U.S. Equal Employment Opportunity Commission at Philadelphia, Pennsylvania.   No EEOC hearing had been requested, so under 29 CFR § 1614.109 the EEOC's Hearings Unit had no jurisdiction.

21.   Upon receipt of the EEOC Judge's Scheduling Order due to the Defendant Agency's erroneous forwarding of the 2008 file (TD-08-0329) to the EEOC's Hearings Unit at Philadelphia, the EEOC's Chief Judge at Philadelphia, on May 5, 2009, after receipt of a letter from Boandl's counsel, dismissed the case, attaching the April 13, 2009 letter of Boandl's counsel.

22.   Boandl's counsel has repeatedly reminded Defendant Agency's management (*e.g.*, in counsel's August 25, 2009 letter to the Treasury Complaint Mega Center in Dallas, Texas) that pursuant to 29 CFR § 1614.110(b), where the complainant does not reply to a notice under 29 CFR

7.

§ 1614.105(f), "the agency shall take final action by issuing a final decision." (Emphasis added). To date no final Agency Decision has been issued.

23. The regulatory scheme at 29 CFR § 1614 et seq. mandates that a Federal Agency must follow the Regulations limited time span in processing an administrative Complaint of employment discrimination against a Federal agency. After the reversal and remand of Boandl's 2008 case by the EEOC's Office of Federal Operations, the Defendant EEO Investigator submitted the investigative report to the Defendant Agency's Treasury Complaint Mega Center at Dallas, Texas, and the investigative file was received by the Mega Center on March 11, 2009. In a letter dated June 5, 2009, the Defendant belatedly complied with the requirements of the Regulations at 29 CFR § 1614.108 (f), by issuing the notice as to Boandl's election rights. The Defendant Agency admitted, in the June 5, 2009 letter, that it had "inadvertently sent this case to EEOC for a hearing instead of issuing an election letter."

24. The Regulations at 29 CFR § 1614.110 mandate that if in response to the 29 CFR § 1614.108 (f) notice, the complainant does not make an election, the Agency shall issue a final Agency Decision "within 60 days of the end of the 30 day period for the complainant to request a hearing."

25. The right to file a civil action in the U.S. District Court on Boandl's 2008 administrative Complaint (TD-08-0329) comes within the clear intent of the provisions of 29 CFR § 1614.407, 29 CFR § 1614.110 and the Federal Sector Regulations at 29 CFR § 1614 et seq. in their entirety.

8.

## COUNT I

### THE REHABILITATION ACT OF 1973 - AS AMENDED -
### 29 U.S.C. §§ 706, 791-94,
### amended in 1992 at 29 U.S.C. § 791(g),
### to adopt the standards of the
### Americans with Disabilities Act,
### 42 U.S.C. § 12101

### Disability - Physical - Mental (Depression) -
### Retaliation - Retaliatory Harassment -
### <u>Hostile Work Environment - Constructive Discharge</u>

26.  This paragraph incorporates paragraphs 1 to 25 herein by reference as if specifically stated herein.

27.  Within the meaning of the Rehabilitation Act as amended by the Americans with Disabilities Act, 42 U.S.C. § 12101:

    a.    Mr. Boandl is a qualified individual with physical and mental (depression) <u>disabilities</u> who could perform the essential job duties of his position as an Internal Revenue Agent for the Internal Revenue Service, U.S. Department of the Treasury, with or without reasonable accommodation. Nevertheless, the retaliatory harassment and retaliatory work environment forced Mr. Boandl to take retirement due to the intolerable, threatening, and unchecked biased work environment.

    b.    Mr. Boandl was <u>regarded</u> as having physical and mental <u>disabilities</u> by his employer, having followed the Defendant-Agency's policy of self-identification as an employee with disabilities.

c.     Mr. Boandl has a record of physical and mental disabilities. Plaintiff experienced illegal employment discrimination in violation of the Rehabilitation Act and the interrelated Americans with Disabilities Act (ADA).

d.     Plaintiff, Richard Boandl, has suffered from severe physical disabilities which substantially limit his major life activities since early childhood. At one year of age he was diagnosed with polio. He suffers from paralysis in both of his legs, one leg is completely paralyzed; the other is partly paralyzed.

e.     During all of the relevant time periods, these effects of polio entitled Boandl, under the government's own policies, to special affirmative action, EEOC Management Directive 715. Plaintiff wears a large brace on his left leg; he has a rod in his right leg.

f.     The major life activities that are substantially limited by the paralysis due to polio include: walking; bending; lifting; sitting; and standing. To illustrate, when sitting, Boandl experiences back pain.

g.     Plaintiff, Richard Boandl, has suffered from chronic lymphocytic leukemia since at least July, 2000. This disease causes fatigue. Boandl experienced a recurrence of depression and anxiety in 2003. Other conditions include arthritis since August, 2004, when he fell at the IRS office, and bursitis in his left elbow. Major life activities that are substantially limited due to these

medical conditions are working, thinking, concentrating, interacting with others at home and at work, and sleeping. Medications for depression and anxiety include Wellbutrin at various dosages. Plaintiff suffered further fatigue due to side effects of these medicines. The arthritis and bursitis have added further to the substantial physical limitations of the major life activities described at subparagraph 27(b) herein.

h.   Mr. Boandl had explained to Mr. Michael Bailey, the Agency's Reasonable Accommodations Facilitator, that as he grows older, and with his additional disabilities, it is increasingly difficult and very painful just to get in and out of the car and to walk. Yet, contrary to Agency policy, Boandl was denied the use of a cell phone in October, 2003, just weeks after his first employment bias case alleging denial of promotion. Ironically, his supervisor, Ms. Heasley, admitted that before October, 2003, Mr. Boandl was performing his field duties as an IRS Agent in a satisfactory manner. The Agency failed to realize that the focus should <u>not</u> be whether the individual has the courage to participate in major life activities, but whether the employee experiences significant obstacles when he does so. <u>Emory v. Astrazeneca Pharmaceuticals</u>, 401 F.3d 174 (3d Cir. 2005).

11.

28. Boandl, an experienced Internal Revenue Agent with a history of commendations, was stereotyped due to his disabilities which significantly limited his major life activities and by his history and record of such disabilities from 2003 when he was denied promotions and then denied reasonable accommodation, subjected to retaliation and harassment, denied proper evaluations, such as recognition for commendations and special achievements, subjected to pretextual evaluations and discipline, subjected to retaliatory investigations, a hostile work environment, and intolerable working conditions, which led to his forced termination shown by his unplanned retirement.

29. The working conditions were such as to constitute a constructive discharge. As further evidence of the Agency's retaliatory animus, even after Boandl's constructive discharge in 2004, he was subjected to untrue negative references. These negative references were given after Boandl, in September, 2007, applied for enrolled status to represent taxpayers before the Internal Revenue Service. On Boandl's appeal to the Agency's own Director of Professional Responsibility, Plaintiff Boandl was granted, effective April 17, 2008, his enrolled status to practice before the Internal Revenue Service.

30. Despite medical treatment and physical therapy, the use of a leg brace for one leg and a rod in the other leg, and other corrective devices, due to his physical limitations which substantially limit his major life activities as described herein, Boandl suffers pain, fatigue, and requires increased time for all of the normal activities of daily living. The ongoing retaliatory harassment and hostile work environment from 2003 forward have required psychiatric consultations for job-related depression and anxiety.

31. Despite his severe lifetime physical disabilities due to polio, Boandl was encouraged by his mother from early childhood to strive to take his significant physical disabilities as a challenge. This ingrained approach to life was reflected in Mr. Boandl's volunteering for difficult, sensitive and even dangerous assignments throughout his thirty-one year career at the Internal Revenue Service. Boandl, a college graduate, handled: three undercover cases; criminal cases, for which he received awards; tax protestor cases; illegal activity cases, such as drug trafficking and embezzlement; quality enforcement; and return preparer penalty cases. Boandl handled special projects for the IRS, including abusive tax shelters and injunctive relief investigations. He served as an IRS classroom instructor in areas such as penalty cases and modern technology.

32. Despite his proven record of achievements, after Boandl filed his initial administrative employment bias Complaint in denial of promotion in 2003, he was subjected to an unrelenting pattern of retaliation, harassment, and an ever increasing hostile work environment. Plaintiff's initial employment bias Complaint in August, 2003 (after some thirty (30) years of service for the IRS) was followed by ever increasing retaliatory bias beginning just weeks later in September, 2003.

33. Diane Heasley, Boandl's supervisor as of October, 2003 had been involved in the ranking process for the promotional opportunities that denied Boandl, and which were raised in his initial August, 2003 administrative employment bias case.

34. Clear evidence of the retaliatory treatment following Boandl's initial August 23, 2003 administrative Complaint is demonstrated by supervisor Heasley's pattern of ignoring awards and accomplishments of Plaintiff. Mr. Boandl, throughout his IRS career, was conscientious in working with taxpayers to bring them into compliance with IRS requirements. At the same time he was effective in recognizing evidence of criminal tax fraud. He received compliments from taxpayers, taxpayers' representatives, and even a commendation from the Commissioner of the Internal Revenue Service. All of these positive steps by Boandl, in light of supervisor Heasley's retaliatory mind set, were viewed as negatives in her evaluations.

35. All of these positive interactions by Boandl were totally consistent with the IRS' own concept of "balanced measures." The Service's balanced measures included "customer satisfaction." Heasley repeatedly totally ignored compliments Boandl received, *e.g.*, compliments Plaintiff received from other segments of the IRS workforce, such as the Special Agent in charge of Criminal Investigations. Ms. Heasley failed to take a reasonable view of the performance of this Plaintiff, an experienced IRS employee with thirty years of experience. All of her actions belittling Boandl, and attempts to make inconsequential items, such as a minor time sheet error, into an important error, were contrary to IRS stated policy. The Internal Revenue Manual provides at 1.5.1 that under the IRS Balanced Measure System: "it is not possible to prescribe acceptable actions for every situation."

36. All of the actions of Boandl as criticized by Ms. Heasley, including Boandl's actions in assisting taxpayers to come into compliance with IRS requirements; his actions showing respect for taxpayers' rights and taxpayers' privacy; his positive interactions with other segments of the IRS workforce; and his practical interpretation of IRS rules, were completely consistent with the Internal Revenue Restructuring and Reform Act, as enacted July 22, 1998. In dramatic contrast, Ms. Heasley's sworn testimony reflected a total lack of knowledge of the letter and the spirit of the modern IRS as envisioned by Congress in the 1998 Reform Act.

37. Ms. Heasley's ongoing retaliatory harassment beginning shortly after Boandl's initial employment bias administrative Complaint was followed by a pattern of intimidation designed to justify an illegal, intolerable and hostile work environment with the aim of either terminating Boandl, in violation of the Rehabilitation Act, as amended, or of forcing Boandl's constructive discharge.

38. The ongoing illegal acts in violation of the ADA and other Federal anti-bias laws invoked in this suit include: unrelenting harassing and demeaning treatment; refusal to engage in the required ADA interactive process; giving Boandl assignments outside the normal work environment requiring travel for long distances; repeated refusal of reasonable accommodation; issuing a pretextual "opportunity letter" which resulted in removing Boandl from the "flexiplace" program (which had given Boandl some accommodation of his severe physical disabilities); as well as pretextual referral for investigation to the Treasury Inspector General for Tax Administration; and forced discharge. Taylor v. Phoenixville School Dist., 184 F.3d 296, 311 (3d Cir. 1999).

15.

39. Supervisor Heasley's sworn testimony demonstrates her total lack of the knowledge required of a Federal supervisor for interaction with a Federal employee with multiple severe disabilities that substantially limit major life activities.  She testified that she was unaware of the Agency's procedure for an employee's self-identification of disabilities, a system Boandl had utilized.  Heasley was unaware that the Federal government was required to be a model employer for the disabled.  She applied improper standards for evaluating the rights of an employee with disabilities, *e.g.*, concluding that since other Agents did not have cell phones, therefore Boandl did not deserve one.  Ms. Heasley clearly resented Mr. Boandl's questioning her role in the issue of the ranking process for the lost promotional opportunities, as set forth in Plaintiff's original August, 2003 bias Complaint.

40. Boandl, in some thirty (30) years of loyal service to the IRS, had never filed any employment bias claim, but the selection of younger, less qualified females, without disabilities, and lacking his depth of experience, motivated his very first employment discrimination claim.  Evidence of the pretextual evaluations made by Heasley is shown by the contrast between Plaintiff's earlier evaluations, *e.g.*, between his evaluation for the period ending May 20, 2002 and his evaluations after his August, 2003 EEO Complaint.

41. The Defendant-Agency failed to consider properly the timing and sequence of events between Boandl's first employment bias Complaint of August, 2003 and the ever escalating retaliatory treatment of Boandl beginning within weeks of the August, 2003 EEO Complaint.

16.

42. The Defendant-Agency failed to consider the contrast between Boandl's thirty (30) year history of successful performance in a broad range of duties and his many commendations as contrasted with pretextual evaluations and discipline beginning within weeks of his first employment bias claim.

43. The Defendant-Agency failed to consider properly supervisor Heasley's total lack of knowledge of the Agency's own standards for evaluation of employee job performance as adopted after the IRS Reform Act.

44. The Defendant-Agency failed to consider supervisor Heasley's lack of knowledge of her special responsibilities to an employee with paralysis as required by the Rehabilitation Act and under the standards established by the EEOC and by the Defendant-Agency's own requirements.

45. The Defendant-Agency failed to recognize that there was a total failure to engage in the required interactive process as established by the Rehabilitation Act, as amended, to establish the standards of the Americans with Disabilities Act.

46. The Defendant-Agency failed to take any effective action to educate supervisors as to the requirements of the Rehabilitation Act, as amended, and failed to take effective action to prevent harassment and retaliation in the workforce.

47. Mr. Boandl was at all relevant times a qualifed individual who could perform the essential functions of his job despite multiple disabilities which substantially limited major life activities.

48. The Agency's callous indifference to the hostile work environment despite Boandl's efforts to obtain corrective action further fostered an intimidating, threatening and retaliatory work environment. These acts were in clear violation of the anti-retaliation provisions of section 503 of the Americans with Disabilities Act, 42 U.S.C. § 12203.

WHEREFORE, Plaintiff, Richard Boandl, pursuant to the Rehabilitation Act of 1973, as amended, prays for the following relief:

a.    monetary damages to compensate Plaintiff for the economic loss he has suffered, consistent with the Rehabilitation Act and the ADA's remedial purpose;

b.    reformation of the harassing, threatening and retaliatory hostile work environment at IRS, which violates the disability laws;

c.    restoration of all the employment related rights and benefits to which Plaintiff would have been entitled if he had not been subjected to the violations of the disability laws described herein;

d.    award of compensatory damages for the severe emotional injuries caused by the egregious acts complained of herein;

e.    award of reasonable attorney's fees and costs;

f.    such other equitable, injunctive, declaratory and legal relief as to this Court may seem just, proper and necessary to bring the Defendant into compliance with the Rehabilitation Act of 1973, as amended.

18.

## COUNT II

## THE AGE DISCRIMINATION IN EMPLOYMENT ACT  - AS AMENDED - 29 U.S.C. § 621

### Age Discrimination - Retaliation - Retaliatory Harassment - Hostile Work Environment - Constructive Discharge

49.  This paragraph incorporates paragraphs 1 to 48 herein by reference as if specifically stated herein.

50.  The unchecked subjective decision making of the Defendant-Agency gave illegal preference to younger, less qualified workers.  Thereby, these intentional practices illegally deprived Plaintiff Boandl of the right to full participation in the workplace.  Boandl was born October 21, 1948.

51.  Boandl was a career employee with a record of achievements and commendations as detailed in this Complaint when Ms. Heasley was involved in the ranking process for promotional opportunities.  Boandl's first employment bias case raised issues relating to denial of promotion due to illegal considerations of age in favor of two less experienced younger females, without disabilities.

52.  Boandl's supervisor from 2003, Ms. Heasley, had no knowledge of the rights of employees under the Age Discrimination in Employment Act (ADEA).  She admitted she lacked knowledge even as to which employees are protected by the Age law.  Ms. Heasley lacked training as to the IRS' own standards for evaluation of job performance of subordinate employees.  The flawed evaluation process for promotion included stereotypical thinking of Boandl, such as ranking on the basis of "potential."  Such evaluations on the basis of potential, rather than upon objective job-related criteria have been recognized as presenting a mere euphemism for age.

19.

53.  In the evaluation and ranking process for Boandl's application for promotion to the position of Internal Revenue Agent, Grade GS-13, his greater credentials and professional skills, under objective standards were ignored.  One of the younger selectee's experience was in the area of general enforcement, *i.e.*, auditing of tax returns with no special features.  Boandl's greater experience included a proven record of performance and awards in a variety of areas, not only general enforcement, but also special enforcement, such as relating to illegal activities; quality enforcement; special assignments, such as cases of "abusive tax shelters."  Boandl was subjected to unequal evaluation standards as compared with younger employees lacking his broad range of experience.

54.  Following Boandl's 2003 employment bias Complaint, Ms. Heasley, herself involved in the ranking process which denied Boandl selection in favor of younger, less qualified workers, engaged in a pattern of retaliatory harassment and baseless negative false accusations, reprimands, pretextual evaluations and fostered unwarranted investigations.

55.  The Agency failed to take any effective action to educate supervisors as to the requirements of the Age Discrimination in Employment Act, and failed to take effective action to prevent harassment and retaliation in the Federal workplace.

56. Age was the "but for" cause of the adverse employment actions challenged in this Count II as violative of the ADEA.

WHEREFORE, Plaintiff, Richard Boandl, pursuant to the Age Discrimination in Employment Act, prays for the following relief:

a.      monetary damages to compensate Plaintiff for the economic loss he has suffered, consistent with the Age Discrimination in Employment Act's remedial purpose;

b.      reformation of the harassing, threatening and retaliatory hostile work environment at IRS, which violates the age law;

c.      restoration of all the employment related rights and benefits to which Plaintiff would have been entitled if he had not been subjected to the violations of the age law as described herein;

d.      award of reasonable attorney's fees and costs;

e.      such other equitable, injunctive, declaratory and legal relief as to this Court may seem just, proper and necessary to bring the Defendant into compliance with the Age Discrimination in Employment Act.

## COUNT III

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 - AS AMENDED - 42 U.S.C. § 2000e-2(a) et seq.

### Gender Bias (Male) - Unequal Evaluation - Unequal Treatment - Failure to Promote - Hostile Work Environment - Retaliation Forced Retirement (Constructive Discharge)

57. This paragraph incorporates paragraphs 1 to 56 herein by reference as if specifically stated herein.

58. Despite some thirty (30) years of experience including many awards and commendations, and a history of volunteering for difficult and even dangerous assignments, the male Plaintiff was denied equal opportunity in evaluations and promotional opportunities in favor of female candidates who were less qualified, less experienced, and yet were promoted to the grade GS-13 level.

59. After thirty (30) years of responsible work experience, Boandl recognized that he was denied upward mobility to the GS-13 level position while female candidates lacking his greater breadth of experience were selected. This unequal denial of promotional opportunities led plaintiff to file in August, 2003 his very first administrative employment bias Complaint.

60. Within weeks of this initial EEO Complaint, Supervisor Heasley, a female involved in the ranking process for the selections, began her egregious acts of intimidation, retaliation, and an unrelenting pattern of harassment, which led to his forced retirement.

22.

61. The retaliatory harassment was reflected in false accusations designed to discredit Boandl, unjustified negative evaluations, a practice of viewing positive accomplishments and commendations, including even a commendation from the Commissioner of Internal Revenue, as demonstrating some negative action on Boandl's part.

62. As a method of retaliation, Ms. Heasley took extreme illegal actions within weeks of the initial August, 2003 EEO Complaint, including refusing to engage in the required interactive discussion with Boandl (to attempt reasonable accommodations for Boandl's severe disabilities); and pretextual evaluations and discipline. The extreme continuing retaliatory acts even included efforts to refer Boandl for internal investigation. The investigation was declined. The pattern of retaliatory harassment, and the hostile work environment led to depression and anxiety and to Boandl's October, 2004 constructive discharge.

63. All of Ms. Heasley's negative intimidating actions were violative of the anti-retaliation provisions of Title VII of the Civil Rights Act.

64. All of Ms. Heasley's actions complained of herein were not only in violation of the basic Federally protected right of Title VII to equal opportunity regardless of sex, but also, in complete conflict with the IRS' "Balanced Measures" adopted pursuant to Congress' enactment of the IRS Reform Act. Boandl in his actions throughout his career reflected the kind of professionalism and understanding of taxpayers' rights, and the proper duties of an IRS Agent, that are the concepts of the modern IRS as envisioned by Congress in enacting the IRS Reform Act.

23.

65.   The Agency failed to take any effective action to educate supervisors as to the requirements of Title VII of the Civil Rights Act, as amended, and failed to take effective action to prevent harassment and retaliation in the Federal workplace.

WHEREFORE, Plaintiff, Richard Boandl, pursuant to Title VII of the Civil Right Act of 1964, as amended, prays for the following relief:

a.    monetary damages to compensate Plaintiff for the economic loss he has suffered, consistent with Title VII's "make whole" purpose, Albemarle Paper Co. V. Moody, 422 U.S. 405 (1975);

b.    reformation of the harassing and retaliatory hostile work environment at IRS;

c.    restoration of all the employment related rights and benefits to which Plaintiff would have been entitled if he had not been subjected to the Title VII violations described herein;

d.    award of compensatory damages for the severe emotional injuries caused by the egregious acts complained of herein;

e.    award of reasonable attorney's fees and costs;

f.    such other equitable, injunctive, declaratory and legal relief as to this Court may seem just, proper and necessary to bring the Defendant into compliance with Title VII of the Civil Rights Act, as amended.

24.

## JURY DEMAND

All of the policies, practices and actions complained of above have deprived Mr. Boandl of promotional opportunity, equal treatment and equal evaluations and subjected him to unrelenting retaliatory harassment, intimidation and a hostile work environment due to impermissible and illegal considerations of his disabilities, age, gender (male), and due to his assertion of the right to equal employment opportunity. Accordingly, Plaintiff requests that this Court accept jurisdiction and he demands trial by jury of all issues in this action, except those issues which under law are triable solely by the Court.

Respectfully submitted,

*Mary Ann Hagan*

MARY ANN HAGAN

Dated: October 19, 2009                    Attorney for Plaintiff

1700 Sansom Street, 7th Floor

Philadelphia, PA 19103

(215) 564-1008 (voice)

(215) 564-1183 (fax)

haganmaeeo@verizon.net

Attorney I.D. No. 11703